IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, AN ILLINOIS CORPORATION, | ) ) ) ) | CIVIL NO. 14-00532 SOM/BMK |
| Plaintiff, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART (1) STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT AND (2) NOLAN HANOHANO'S COUNTERMOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) ) | |
| NOLAN HANOHANO, | ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART (1) STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT AND (2) NOLAN HANOHANO'S COUNTERMOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

This case, brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeks a determination as to whether Plaintiff State Farm Fire and Casualty Company has a duty to defend its insured, Defendant Nolan Hanohano, with respect to claims brought against him in an underlying suit.

Before the court are countermotions for summary judgment.  Because the claims asserted against Hanohano are at least potentially covered by the homeowner's policy that State Farm issued to Hanohano, the court concludes that State Farm currently has a duty to defend Hanohano.  Hanohano's motion is, therefore, granted on this issue.  Hanohano's attorney's fees request is denied without prejudice to his filing of a motion that complies with Local Rule 54.3.

The court does, however, grant State Farm summary

judgment on the issue of whether it must indemnify Hanohano for any punitive damages awarded in the underlying action. Hanohano's policy clearly does not provide coverage for punitive damages.  State Farm's motion is therefore granted in part and denied in part.

II.      **BACKGROUND.**

         **A.  The Underlying Lawsuit.**

         On June 20, 2014, a suit was filed in this court, Daphne S. Dinnan, et al. v. City and County of Honolulu, Nolan Hanohano, et al., Civil No. 14-00286 DKW/RLP, alleging the wrongful death of Stephen J. Dinnan.  See ECF No. 30-2.  The suit was instituted by Daphne Dinnan, individually and as personal representative of the Estate of Stephen Dinnan and Sean F. Dinnan; Elisha Kalani, individually and as parent and next friend of her minor child, Steisha-Lovie Kalani, Ian C. Dinnan, Christina K.S. Dinnan, and Katelyn S.L. Dinnan; and Shardeah K.K.K. Serhant, individually and as parent and next friend of her minor child, Shaydence K. Serhant and Saydee K.P.H.K. Serhant. See id.

         According to the Complaint, on June 3, 2013, Hanohano was told by his son that Hanohano's truck had been stolen from Makapu'u Beach Park.  See id., PageID # 201.  Using GPS to track the cellphone that his son had left in the truck, Hanohano and his son located the truck in Waimanalo, Hawaii.  See id., PageID

2

# 201; ECF No. 1, PageID # 3.

Hanohano and his son called 9-1-1 to report the theft and the location of the truck. See ECF No. 30-2, PageID #s 201-02. Officer Matsumoto responded to the call and met Hanohano and his son near the property where the truck was located. See id. Hanohano then led Officer Matsumoto to the property. See id. At the time, Dinnan and two other men were at the property smoking marijuana. See id.

When one of the men saw Officer Matsumoto and Hanohano come onto the property, he immediately tried to get on his motorcycle, but was pulled off the bike by Officer Matsumoto and told to stay put. See id., PageID #s 202-03. Dinnan, allegedly fearful that he would be arrested for smoking marijuana, also tried to leave. See id. Officer Matsumoto called out to Dinnan and told him to remain so that he could ask Dinnan some questions. See id.

Ignoring Officer Matsumoto's command, Dinnan ran toward some stairs leading up to the house. Officer Matsumoto caught up with Dinnan, who locked his arms around the stair railing, which Officer Matsumoto tried to pry Dinnan off of. See id., PageID #s 203-04. When this did not work, Officer Matsumoto hit Dinnan's hands, arms, and body to separate him from the railing. See id., PageID # 205.

According to the Complaint, Hanohano, seeing this and

allegedly "now filled with rage and hatred, walked up to Dinnan, grabbed him by the neck and started choking and squeezing his neck with his bare hands." See id., PageID # 206.  While choking Dinnan, Hanohano allegedly shouted, "You like steal my fucking truck?  You steal from me, you like steal my truck?  This is what you get for stealing from Hawaiians." See id.  Hanohano eventually let go of Dinnan when Officer Matsumoto told him, "Enough already." See id., PageID # 207.  The Complaint alleges that, in choking Dinnan, Hanohano ruptured his windpipe. See id.

Once Hanohano let go of Dinnan, Dinnan tried to flee again, but was chased by Officer Matsumoto, who pulled him to the ground. See id., PageID # 208.  As Dinnan was struggling, Hanohano came over and allegedly held Dinnan's legs while Officer Matsumoto worked at handcuffing him. See id.  Officer Matsumoto asked Dinnan, "Why you running for?  I only want to ask you questions.  So I don't know why you running for." See id.

Hanohano was holding Dinnan's legs while Officer Matsumoto, who is over six foot tall and weighs over 230 pounds, allegedly had his knee on Dinnan's back, between his shoulder blades and near the base of his neck, and was simultaneously pushing Dinnan's face into the ground. See id., PageID #s 208-09.  Dinnan allegedly called out, "Help, help" three times. See id., PageID # 208.  Although Dinnan's face allegedly turned cyatonic (or purple), Officer Matsumoto allegedly continued to

4

apply his body weight to Dinnan's neck, face, and back.  See id.
The Complaint's only allegation about Hanohano at this point is
that he held Dinnan's legs down.  See id., PageID #s 208-09.

Sometime later, Dinnan's girlfriend, who was the mother
of two of his children, was allegedly walking to the driveway
with two other police officers and one of her children.  She saw
Dinnan lying face-down but not moving and allegedly screamed,
"What the hell is going on?"  See id., PageID # 210.  Officer
Matsumoto then allegedly got off of Dinnan and said, "Okay, I'm
done."  See id.  One of the two police officers turned Dinnan
over, and Dinnan allegedly appeared to be lifeless.  See id.  The
two officers tried to resuscitate Dinnan at the scene
unsuccessfully.  See id., PageID #s 210-11.

The Complaint asserts various claims against the City
and County of Honolulu, Officer Matsumoto, and Hanohano.  See ECF
No. 30-2.  The claims asserted against Hanohano include
wrongful death, assault and battery, false imprisonment,
negligence, gross negligence, intentional infliction of emotional
distress, and negligent infliction of emotional distress.  See
id., PageID #s 215-18, 219-21.

Hanohano tendered the defense of this underlying suit
to State Farm.  See ECF No. 1, PageID # 13.  State Farm is
participating in the defense of the underlying suit subject to a
reservation of rights, while seeking declaratory relief in the

5

present action.

**B.    The Homeowner's Policy.**

During the periods alleged in the underlying Complaint,
Hanohano was insured under a homeowner's policy issued by State
Farm on his residence in Kailua, on Oahu.  <u>See</u> ECF No. 1, PageID
# 13.

The policy includes the following liability provisions:

```
SECTION II – LIABILITY COVERAGES
COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought
against an insured for damages because of
bodily injury or property damage to which
this coverage applies, caused by an
occurrence, we will:

1. pay up to our limit of liability for the
damages for which the insured is legally
liable; and

2. provide a defense at our expense by
counsel of our choice.  We may make any
investigation and settle any claim or suit
that we decide is appropriate.  Our
obligation to defend any claim or suit ends
when the amount we pay for damages, to effect
settlement or satisfy a judgment resulting
from the occurrence, equals our limit of
liability.
```

ECF No. 30-4, PageID # 267.

The policy defines "bodily injury" and "occurrence":

```
1. "bodily injury" means physical injury,
sickness, or disease to a person.  This
includes required care, loss of services and
death resulting therefrom . . . .

. . . .
```

6

> 7. "occurrence", when used in Section II of
> this policy, means an accident, including
> exposure to conditions, which results in:
>
> a. bodily injury . . . .

Id., PageID #s 253-54.

The policy includes an exclusion for intentional acts:

> SECTION II--EXCLUSIONS
>
> 1. Coverage L and Coverage M do not apply to:
>
> a. bodily injury or property damage:
>
> (1) which is either expected or intended by
> the insured; or
>
> (2) which is the result of willful and
> malicious acts of the insured[.]

Id., PageID # 268.

The policy also includes a personal injury endorsement, Endorsement FE-7468.4, which provides:

> FE-7468.4 PERSONAL INJURY ENDORSEMENT
>
> DEFINITIONS
>
> The following is added to "occurrence":
> Occurrence also means the commission of an
> offense, or series of similar offenses, which
> result in personal injury during the policy
> period.  All personal injury resulting from
> one offense, series of similar offenses or
> from continuous and repeated exposure to the
> same general conditions is considered to be
> one occurrence.
>
> The following definition is added:
>
> "Personal Injury" means injury arising out of
> one or more of the following offenses:
>
> a. false arrest, false imprisonment, wrongful

eviction, wrongful detention, malicious
prosecution; or

b. libel, slander, defamation of character or
invasion of rights of privacy.

COVERAGE L – PERSONAL LIABILITY

The first paragraph is replaced with the following:
If a claim is made or a suit is brought
against an insured for damages because of
bodily injury, personal injury or property
damage to which this coverage applies, caused
by an occurrence, we will:

SECTION II – EXCLUSIONS do not apply to
personal injury.  Personal Injury does not
apply:

. . . .

2. to injury caused by a violation of penal
law or ordinance committed by or with the
knowledge or consent of any insured;

. . . .

7. when you act with specific intent to cause
harm or injury;

8. to any person or property which is the
result of your willful and malicious act, no
matter at whom the act was directed;

. . . .

All other policy provisions apply.

Id., PageID # 241.

## III.        STANDARD.

Summary judgment shall be granted when "the movant

shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed.

8

R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file

that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).  Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in

10

order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party.  T.W. Elec. Serv., Inc., 809 F.2d at 631.  Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  Id.

**IV.        ANALYSIS.**

This is a diversity action.  See ECF No. 1.  Federal courts sitting in diversity apply state substantive law and federal procedural law.  See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  Ariz. Elec. Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).  In the absence of such a decision, federal courts attempt to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004)

("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

### A.   General Law Concerning Insurance Policies.

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (1994).  Insurance policies must be read as a whole and construed in accordance with the plain meaning of their terms, unless it appears that a different meaning is intended.  Id.; First Ins. Co. of Haw. v. State, 66 Haw. 413, 423, 665 P.2d 648, 655 (1983); see also Haw. Rev. Stat. § 431:10-237 ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson.  Tri-S Corp. v. W. World Ins. Co., 110 Haw. 473, 489, 135 P.3d 82, 98 (2006) (citations omitted); Dawes, 77 Haw. at 121, 883 P.2d at 42.

The duty to defend arises when there is any potential or possibility for coverage.  Sentinel Ins. Co. v. First Ins. Co.

12

of Hawaii, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994) (as amended on grant of reconsideration).  "In other words, the duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists, the insurer owes the insured a defense."  Id. (alterations, quotation marks, and citations omitted).  Any doubt as to the duty to defend "is resolved against the insurer and in favor of the insured."  Id. (citation omitted).  However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend.  Pancakes of Hawaii v. Pomare Props., 85 Haw. 286, 291, 944 P.2d 83, 88 (1997).  In other words, for this court to conclude that State Farm has no duty to defend Hanohano, the court must determine that it would be impossible for a claim in the underlying suit to be covered by State Farm's insurance policy.  See Dairy Rd. Partners v. Island Ins. Co., Ltd., 92 Haw. 398, 412-13, 992 P.2d 93, 107-08 (2000).

    Because the duty to defend turns on the possibility of coverage, this court must consider the issue of coverage.  The burden is on the insured to establish coverage under an insurance policy.  See Sentinel, 76 Haw. at 292 n.13, 875 P.2d at 909 n.13. The insurer has the burden of establishing the applicability of an exclusion.  See id. at 297, 875 P.2d at 914.

    The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy,

provided it is not removed from coverage by a policy exclusion." Dairy Rd., 92 Haw. at 412, 992 P.2d at 108.  The obligation to defend an insured is broader than the duty to indemnify.

     With respect to summary judgment regarding the duty to indemnify, the insurer is "not required to disprove any possibility that its insured might be liable for a claim asserted in the underlying lawsuits." Id. (emphasis omitted).  "Rather, without reference to what the eventual outcome of the underlying lawsuits might actually be, [the insurer is] required only to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policies and the consequent entitlement to the entry of judgment as a matter of law." Id.

     "Hawaii adheres to the 'complaint allegation rule.'" Burlington Ins. Co., 383 F.3d at 944.  In that regard,

> The focus is on the alleged claims and facts. The duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract.  'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'"

Id. at 944-45 (citing Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230 (1994)).

**B.   There Is a Question of Fact as to Whether Dinnan's Injuries Arose from an "Occurrence."**

As a preliminary matter, because Hanohano is not asserting coverage under the Rental Condominium Unitowners Policy, <u>see</u> ECF No. 35-1, PageID # 324, the following discussion only concerns State Farm's duties under his homeowner's policy. <u>See</u> ECF No. 29-2, PageID #s 183-84.

The policy provides coverage for claims made "against an insured for damages because of bodily injury or property damage . . . caused by an occurrence."  <u>See</u> ECF No. 30-4, PageID # 267.  The policy defines "occurrence":

> an accident, including exposure to conditions, which first results in:
>
> a. bodily injury; or
> b. property damage; during the policy period.
>
> All bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence.

<u>See</u> <u>id.</u>, PageID # 244.

State Farm argues that the claims against Hanohano in the underlying lawsuit are not for bodily injury or property damage caused by an "occurrence" because the claims do not allege an "accident."  <u>See</u> <u>id.</u>, PageID # 174-77.

In <u>Hawaiian Insurance & Guaranty Co., Ltd. v. Blanco</u>, 72 Haw. 9, 804 P.2d 876 (1990), the Hawaii Supreme Court

15

discussed the meaning of the term "occurrence" in an insurance policy. The court said that, when examining whether there had been an "occurrence" for purposes of insurance coverage, it examined whether "the insured's expected result of the act or omission was the injury." Id. at 16, 804 P.2d at 880. If yes, the injury was not caused by an accident and was not an "occurrence" for which insurance coverage was available.

The underlying complaint in Blanco alleged personal injury resulting from the insured's firing of a rifle in the general direction of a neighbor. According to the insured, he only intended to frighten his neighbor by firing in his direction, but the bullet ricocheted off an object fifteen feet from where the neighbor was standing and struck his leg. Id. at 15, 804 P.2d at 879. The complaint alleged that the insured's discharge of the rifle was wilful and intentional, as well as negligent. Id. at 12, 804 P.2d at 878. The insured sought coverage, but the insurer refused the tender of defense on the ground that the act was intentionally harmful. Id. at 12-15, 804 P.2d at 878-79.

The Blanco court affirmed the grant of summary judgment in favor of the insurer, reasoning that the bodily injury resulting from the discharge of the rifle was not a covered "occurrence." See id. at 11-18, 804 P.2d at 877-81. Rejecting the insured's argument that the harm was not intended because he

16

only meant to scare his neighbor, the court explained, "we do not see how it logically can be said that . . . the injury . . . was the result of an accident. . . .  That physical injury might result from such an action is certainly something which a reasonable man in [the insured's] position should have anticipated and expected."  Id. at 18, 804 P.2d at 881.

In Hawaiian Insurance & Guaranty Co. v. Brooks, 67 Haw. 285, 686 P.2d 23 (1984), another case relied on by State Farm, the insured was sued after he gave a woman a ride in his vehicle but did nothing to stop another passenger from sexually assaulting her.  See id. at 286-91, 686 P.2d at 24-28.  The woman filed a complaint in state court, asserting both intentional and negligence-based tort claims against the insured.  Id. at 286-87, 686 P.2d at 24-25.  The insurer sought a declaratory judgment providing that it had no duty to defend or indemnify the insured. Id. at 287, 686 P.2d at 25.  The trial court awarded summary judgment in favor of the insurer.  Id.

The issue on appeal in Brooks was "whether the rape of a passenger in an insured vehicle by another passenger was an 'occurrence' that gave rise to a duty on the insurer's part of defending a tort suit brought by the victim against the driver." Id. at 286, 686 P.2d at 24.  In affirming the grant of summary judgment, the Hawaii Supreme Court explained that the sexual assault "was not an accident that resulted in bodily injury

neither expected nor intended" because the driver was aware of the assault but "he chose not to do anything to prevent or mitigate the harm suffered by the victim." Id. at 291, 686 P.2d at 28.  The court thus held that the insurer was not obligated to defend and assume the liability for damages because the bodily injury alleged in the underlying complaint was expected from the insured's perspective.  Id.

The Hawaii Supreme Court later noted that, in both Brooks and Blanco, allegations in the underlying complaints that the insureds' harmful conduct was also negligent did not change the outcome regarding coverage.  Dairy Rd., 92 Haw. at 417, 992 P.2d at 112.  "This court's primary purpose in Brooks and Blanco was to ensure that plaintiffs could not, through artful pleading, bootstrap the availability of insurance coverage under an insured defendant's policy by purporting to state a claim for negligence based on facts that, in reality, reflected manifestly intentional, rather than negligent, conduct." Id.  "[W]hen the facts alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts (such as that the facts as alleged demonstrate 'negligent' rather than 'intentional' conduct) are insufficient to trigger the insurer's duty to defend." Id.

Relying on these and other cases, State Farm contends

18

that the incident in which Hanohano allegedly choked Dinnan and
shouted, "You like steal my f**king truck?  You steal from me,
you like steal my truck?  That is what you get for stealing from
Hawaiians," was not, as a matter of law, an "accident" under the
policy because Hanohano intentionally harmed Dinnan, or at the
very least, should have anticipated that choking him would result
in bodily injury.  See ECF No. 29-3, PageID #s 174-82; ECF No.
38, PageID #s 407-09.  State Farm also insists that the
allegations of negligence and other nonintentional conduct in the
underlying Complaint do not transform otherwise intentionally
harmful conduct, not covered by the policy, into conduct giving
rise to a duty to defend.  See ECF No. 29-3, PageID # 175-79.

        However, even if the alleged choking incident was
intentional, that does not necessarily preclude coverage.  For
State Farm to prevail on its motion, it must establish that it
would be impossible for any claim in the underlying suit to be
covered by the policy.  See Dairy Rd., 92 Haw. at 412-13, 992
P.2d at 107-08; Sentinel Ins., 76 Haw. at 287, 875 P.2d at 904
(holding that duty to defend arises when there is any potential
or possibility for coverage).  When even one claim is
potentially covered, an insurer must defend the entire suit.
See, e.g., Hawaiian Holiday, 76 Haw. at 169, 872 P.2d at 233
("[W]here a suit raises a potential for indemnification liability
of the insurer to the insured, the insurer has a duty to accept

the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage.").

As Hanohano points out, however, the underlying Complaint includes allegations and claims for relief that potentially fall within the coverage provisions in the insurance contract, thereby triggering State Farm's duty to defend.  The underlying claims allege that Hanohano held Dinnan's legs while Officer Matsumoto initially handcuffed Dinnan, then allegedly suffocated Dinnan.  See ECF No. 30-2, PageID # 201.  These actions are not only alleged to have caused Dinnan's death, they are the primary basis upon which the plaintiffs seek damages against the defendants, including Hanohano, for wrongful death, negligence, gross negligence, false imprisonment, and negligent infliction of emotional distress.  See id. ("This is a wrongful death suit against the defendants who were negligent, grossly negligent, and/or willful and wanton in the way they restrained Dinnan when they tried to detain him for questioning and in the process caused his death.").

Notably, the underlying lawsuit does not include a claim limited solely to the choking allegation.  Instead, the alleged choking appears to be alleged as part of continuing acts that culminated in Dinnan's death, while or after Hanohano held Dinnan's legs.  Even if the choking was intentional and subject to the intentional acts exclusion, none of the claims in the

underlying suit can be said to rest solely on the choking.

At the very least, there is a genuine issue of material fact regarding whether Hanohano contributed to Dinnan's death by holding down Dinnan's legs while Officer Matsumoto subdued Dinnan.  Indeed, according to the tort claims, Hanohano's only involvement after the choking was that he "was holding Dinnan's legs down."  See id., PageID # 209.  There are no allegations that Hanohano intended to injure Dinnan by holding his legs, or that Hanohano was even aware that Dinnan was suffocating under Officer Matsumoto's body weight.  See id., PageID #s 208-09.

Nor should the court infer such knowledge.  Unlike the driver in Brooks, who admitted to knowing that the victim was being sexually assaulted by a passenger, it is not clear that, while holding Dinnan's legs, Hanohano knew that he was participating in injuring, much less killing, Dinnan.  After all, Officer Matsumoto was a police officer, who, Hanohano could have reasonably expected, should have been trained in safely apprehending a suspect and avoiding restraints that, without necessity, would be lethal.  It is therefore conceivable that Hanohano was, at most, negligent in assisting Officer Matsumoto in restraining Dinnan.  The underlying claims include one or more potentially covered "occurrences," and State Farm must defend against all claims.

For the same reasons, the court rejects State Farm's

argument that the underlying claims for negligence are merely attempts to recast intentional acts as negligent ones.  In support of its argument, State Farm cites Bayudan v. Tradewind Insurance Co., Ltd., 87 Haw. 379, 957 P.2d 1061 (Ct. App. 1998), State Farm Fire & Cas. Co. v. Elsenbach, No. CV 09-00541 DAE-BMK, 2011 WL 2606005 (D. Haw., June 30, 2011), and Anderson v. Southern Guar. Ins. Co. of Georgia, 508 S.E.2d 726 (Ga. Ct. App. 1998).

　　　None of these cases supports State Farm's position. Although State Farm relies most heavily on Bayudan, that case actually supports the recognition of a duty to defend here.  In Bayudan, the Hawaii Intermediate Court of Appeals noted that certain claims did not give rise to a duty to defend because they, like the alleged injuries, related to a kidnaping and assault.  87 Haw. at 380, 957 P.2d at 1062.  But the court held that the insurer had a duty to defend arising from a separate incident that related to a "slip and fall."  Id. at 380, 957 P.2d at 1063.  The Bayudan court thus vacated the trial court's grant of summary judgment in favor of the insurer on the duty to defend and remanded the case to the trial court in light of the potential coverage raised by the "slip and fall."  Id.

　　　Here, too, the underlying Complaint includes factual allegations that could potentially qualify as intentionally harmful conduct, i.e., the alleged choking incident, and conduct

that was arguably unintentionally harmful, i.e., Hanohano's

restraint of Dinnan's legs.

Elsenbach and Anderson involved allegations of

intentional conduct such as assault and harassment, without

accompanying allegations of additional conduct that might not

rise to the level of an intentional tort.  Those cases do not

support the argument that the claims against Hanohano are merely

attempts to recast intentional acts as negligent ones.

### C.   State Farm Has Not Demonstrated that Coverage Is Precluded by Policy Exclusions.

State Farm argues that coverage is precluded by either

the policy's intentional acts exclusion or its willful and

malicious acts exclusion.  See ECF No. 29-3, PageID #s 181-82.

The policy excludes "bodily injury or property damage:

(1) which is either expected or intended by the insured; or (2)

which is the result of willful and malicious acts of the

insured."  See ECF No. 30-4, PageID # 268.

State Farm's arguments with regard to the policy

exclusions fail for the same reason as its arguments with regard

to whether the claim involves a covered "occurrence."  See ECF

No. 29-3, PageID #s 182-83; ECF No. 38, PageID #s 411-12.  When a

claim is based on alleged injuries that were intended or expected

from the insured's perspective, the claim would be precluded both

because it is not a covered "accident" and because it triggers

the intentional acts exclusion.  Because Hanohano might be held

liable for negligence in holding Dinnan's legs even if Hanohano did not thereby intend to injure Dinnan, the court does not apply the policy's intentional acts exclusion.  Even if Hanohano intentionally held Dinnan's legs, he arguably did not intend the act of holding to cause any injury.

Nor does the willful and malicious acts exclusion preclude coverage here.  See ECF No. 29-3, PageID #s 182-83; ECF No. 38, PageID #s 411-12.  The policy does not define "wilfulness" or "malice."  See ECF No. 30-4, PageID #s 253-54.  The court therefore construes both terms in accordance with their plain meaning, as required under Hawaii law.  See Dawes, 77 Haw. at 121, 883 P.2d at 42.  Black's Law Dictionary defines "willfullness" as "involv[ing] conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong.  The term willful is stronger than voluntary or intentional; it is traditionally the equivalent of malicious, evil, or corrupt."  Black's Law Dictionary (9th ed. 2009).  "Malice" is "[t]he deliberate intent to commit an injury, as evidenced by external circumstances."  Id.  Both terms denote an intent to commit harm, though "willfulness" also includes "inexcusable carelessness" regarding whether the act was right or wrong.

Again, State Farm focuses exclusively on the alleged choking incident, arguing that "the choking and detention[] were

24

willful and malicious," while ignoring the possibility that it may be Hanohano's holding of Dinnan's legs that forms the basis for a potentially covered claim.  See ECF No. 38, PageID # 412. The holding of the legs might not have been willful or malicious, even if it was deliberate.

Moreover, this court cannot say that Hanohano is alleged to have been inexcusably careless in the way he held Dinnan's legs, such that his conduct would be adjudged to be willful.  It is possible that Hanohano will be found to have been willful in this regard, but it is also possible that the trier-of-fact will find that Hanohano was not inexcusably careless in trying to assist Officer Matsumoto, a trained police officer, in restraining Dinnan.

State Farm has not satisfied its particularly heavy burden of proof as the movant for summary judgment regarding its duty to defend.  See Dairy Rd., 92 Haw. at 412, 992 P.2d at 107 (holding that the "already heavy burden of proof as a movant for summary judgment [is] significantly augmented" when an insurer seeks summary judgment that it has no duty to defend).  By contrast, Hanohano has carried his burden of establishing the possibility that he could be found liable for a covered claim. Hanohano is therefore entitled to summary judgment in his favor with regard to State Farm's duty to defend.

### D.   Punitive Damages.

State Farm contends, and Hanohano does not dispute, that State Farm is not responsible for any punitive damages that may be awarded against Hanohano in the underlying suit.  Under Hawaii law, "[c]overage under any policy of insurance issued in [Hawaii] shall not be construed to provide coverage for punitive or exemplary damages unless specifically included."  See Haw. Rev. Stat. § 431:10-240.  The policy does not specifically include coverage for punitive damages.  State Farm thus is not obligated to indemnify Hanohano for any punitive damages that are awarded against him.  State Farm must nevertheless defend Hanohano against the punitive damage claims, as well as against the other claims, to satisfy its general duty to defend him as to the entire suit.  See, e.g., Hawaiian Holiday, 76 Haw. at 169, 872 P.2d at 233 ("[W]here a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage.").

### E.   Attorney's Fees.

Hanohano also seeks attorney's fees and costs for this suit, pursuant to Haw. Rev. Stat. § 431:10-242.  See ECF No. 35-1, PageID # 325.  Haw. Rev. Stat. § 431:10-242 provides, "Where an insurer has contested its liability under a policy and is

26

ordered by the courts to pay benefits under the policy, the policyholder, the beneficiary under a policy, or the person who has acquired the rights of the policyholder or beneficiary under the policy shall be awarded reasonable attorney's fees and the costs of suit, in addition to the benefits under the policy." While this court's ruling that State Farm has a duty to defend Hanohano in the underlying suit clearly affects the attorney's fees issue, this court defers any ruling on the subject until an attorney's fees motion complying with Local Rule 54.3 has been filed.

**V.       CONCLUSION.**

For the above reasons, the court grants Hanohano's motion seeking a ruling that State Farm has a duty to defend Hanohano in the underlying action.  State Farm's motion is denied with respect to all matters other than the punitive damages issue.

Judgment will be entered following resolution of the attorney's fees issue.  The court sets February 12, 2016, as the deadline for filing such a motion.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 25, 2016.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

State Farm Fire and Casualty Company v. Nolan Hanohano, Civ. No. 14 00532 SOM/BMK; ORDER GRANTING IN PART AND DENYING IN PART (1) STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT AND (2) NOLAN HANOHANO'S COUNTERMOTION FOR SUMMARY JUDGMENT